**MODESTO IRRIGATION DISTRICT**
Plaintiff—Appellant,

v.

**PACIFIC GAS AND ELECTRIC COMPANY; Dynergy Power Services, Inc., Successor to Destec Power Services, Defendants—Appellees.**

No. 99–17069.
D.C. No. CV–98–03009–MHP.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 15, 2001.

Decided Dec. 6, 2002.

Before MAGILL,* FERNANDEZ, and KLEINFELD, Circuit Judges.

### MEMORANDUM **

We review 12(b)(6) dismissal of a complaint without leave to amend *de novo*. *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1101 (9th Cir.1999). We refer throughout to PG & E as shorthand for both defendants, PG & E and Dynergy (Destec), except where the context makes it clear that we mean only PG & E.

PG & E's motion to take judicial notice of Modesto's application to FERC, the California Public Utilities Commission's intervention opposing Modesto's application, FERC's docket regarding these, and a FERC ruling, is granted.

■ PG & E argues that the federal courts have no jurisdiction over claims such as Modesto's, because FERC's comprehensive regulatory authority by implication displaces the antitrust laws, particularly in view of the 1992 amendments granting FERC authority to order wholesale wheeling. The argument rests on analogy and policy rather than authority directly on point. The argument cannot withstand the force of the statutory language, which survives the 1992 amendments, that the relevant statutory provisions "shall not be construed to modify, impair, or supersede the antitrust laws." 16 U.S.C. § 824k(e)(2). There is not a good ground for distinguishing *Cost Management Services, Inc., v. Washington Natural Gas Co.*, 99 F.3d 937 (9th Cir. 1996) or treating *Otter Tail Power Co. v. United States*, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973), as having been vitiated by statutory changes.

■ PG & E next argues that dismissal was required by the *Noerr–Pennington* doctrine. Its theory is that because it was litigating before FERC the question whether Modesto's proposal was a sham wholesale transaction for which an order was prohibited under 16 U.S.C. § 824k(h), its First Amendment protection under the *Noerr–Pennington* doctrine shielded it from liability. Its brief on this point claims that its refusal was incidental to its position before FERC because, had it voluntarily provided service, its acquiescence would have mooted the issue before FERC. Its analogy is to *Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1528 (9th Cir.1991).

In *Columbia Pictures* we noted that "on the facts" the "request for licensing amounted to an offer to settle the lawsuit." Settlement would of course have mooted out the lawsuit. The record on appeal (the complaint and material of which notice has been taken) does not establish that Modesto's request for service "amounted to an offer to settle."

PG & E has not established that its refusal to deal was "incidental" to its petitioning activity protected by the *Noerr–Pennington* doctrine. So far as we can

* The Honorable Frank J. Magill, Senior Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

determine from what is before us, PG & E could have provided service, or agreed to provide service, while reserving its right to contest its obligation to do so before FERC on the "sham wholesale transaction" theory or in other forums, and subject to eliminating service if it prevailed, much as a liability insurer sometimes provides defense services subject to a reservation of rights while it litigates coverage in a declaratory judgment action. As in *Columbia Steel Casting Co. v. Portland General Electric Co.*, 111 F.3d 1427, 1446 (9th Cir.1996), the theory of liability is not that PG & E petitioned the agency, but that it acted privately and voluntarily prior to and independently of agency action. Had PG & E demonstrated that it was not permitted to serve Modesto without a FERC order, or that serving Modesto would have mooted out its position before FERC, the case might be different, but its brief does not attempt to establish the former, and the record does not establish the latter.

■ PG & E next argues that its challenged conduct was unilateral rather than collusive, with Destec as much subject to its unilateral decision as Modesto, so no claim is stated under section 1 of the Sherman Act. This argument cannot withstand the language of the complaint, at paragraphs 30 and 31, which plainly alleges a contract with Destec to deny service to Modesto as the restraint of trade challenged. The theory of the complaint is that PG & E made an agreement with Destec that so that Destec would abandon its attempt to serve Modesto and collude in PG & E's refusal. It does not detract from the "agreement" element that Destec's agreement may have been compelled by PG & E's market power. *Betaseed, Inc. v. U & I In.*, 681 F.2d 1203, 1225 (9th Cir.1982). We do not suggest that Destec was required to continue litigating with PG & E, rather than settling its claims against the latter, if it had any. We only say that further factual development is required.

Similarly, further factual development of the conspiracy claim under § 2 is required.

PG & E next argues that Modesto did not allege "antitrust injury" because without FERC approval, PG & E could not have provided power to Modesto regardless whether it preferred not to. PG & E's citations of authority do not establish this proposition.

The first, 16 U.S.C. § 824a(b), says that FERC "may by order direct a utility ... to establish physical connection of its transmission facilities with the facilities of one or more other persons engaged in the transmission or sale of electrical energy...." This does not say that a utility cannot establish such a connection without an order, just that FERC may make an order compelling it to establish a connection. Likewise for its second citation, to 16 U.S.C. § 824i(a).

■ When we asked for further enlightenment on this issue at oral argument, PG & E said that sections 205 and 211 prevented it from wheeling power to Modesto until FERC approved. Section 205 (16 U.S.C. § 824d)) requires public utilities to file with FERC "schedules showing all rates ... together with all contracts....," 16 U.S.C. § 824d(c), and says "no change shall be made ... except after sixty days notice to the commission and to the public." 16 U.S.C. § 824d(d). FERC has authority to "suspend the operation" of a schedule filed. 16 U.S.C. § 824d(e). The statutory scheme cited does not condition a new service or rate on prior approval; instead it conditions it on filing notice, and subjects it to the risk of subsequent suspension or disapproval.

■ PG & E's additional citation, section 211 (16 U.S.C. § 824(j)), entitles any electric utility to apply to FERC "for an order ... requiring a transmitting utility to provide transmission services...." 16

U.S.C. § 824j(a). This section provides a means for compelling a recalcitrant transmitting utility to provide transmitting services, but contains no language expressly prohibiting a transmitting utility from doing so voluntarily. We do not hold that utilities may provide services such as are at issue without FERC approval, only that the limited citations and argument provided by PG & E do not establish that they may not.

PG & E also argues that local approval of service would have been needed under state laws requiring approval for provision of services by an irrigation district outside its defined area. On a 12(b)(6) record, consisting in this case of the complaint and the materials of which judicial notice is taken, we do not know what the relevant defined area was, and we are unable to conclude whether the service at issue would fall within this prohibition, assuming without concluding that the prohibition operates as PG & E argues.

REVERSED.